IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| JUDY DARK, Personal Representative of Estate of Thomas E. Dark, Deceased, | Civil No. 03-3122-CO |
| Plaintiff, | FINDINGS AND RECOMMENDATION |
| v. | |
| PHILIP MACDONALD; et al., | |
| Defendants. | |

COONEY, Magistrate Judge:

Plaintiff brings this civil rights action against defendants alleging that defendants were deliberately indifferent to the medical needs of deceased while he was lodged in jail awaiting trial. Plaintiff seeks economic damages, non-economic damages, punitive damages, and reasonable attorney's fees and costs. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Before the court is a motion for summary judgment by defendants Lake County, Sheriff McDonald, and Nurse Wilkie and an alternative motion to dismiss by defendant Wilkie (#37), which plaintiff opposes; and defendants' motion to strike declarations (#51), as to which plaintiff has not filed any response.

## I. DISCUSSION

Defendants contends that plaintiff cannot meet the standard of "deliberate

indifference" to decedent Mr. Dark's medical needs so as to prove a violation of his Fourteenth Amendment due process rights. Defendants contend that there is no evidence that Sheriff McDonald operated the Lake County Jail with the intent of denying medical treatment and harming inmates such as plaintiff. Defendants contend that they could not have known the serious medical problem afflicting the deceased and, therefore, could not have been deliberately indifferent to his needs; the Sheriff's budget for medical needs is flexible and is based on actual inmate need; and the County's nurse practitioner regularly visits the jail to assist inmates and inmates are referred to medical professionals in the community. As to defendant Wilkie, defendants contend that there are no facts which show that she knowingly disregarded an excessive risk to inmate health. As to defendant Lake County, defendants contend that its budget does not withhold funds from prison health care funds and there is no intent to deprive inmates of their right to health care. Defendants also contend that Sheriff McDonald and Nurse Wilkie are entitled to qualified immunity for any alleged constitutional violation. Defendants contend, in the alternative, that all claims against defendant Wilkie should be dismissed because she has not properly been served with a summons and complaint. Plaintiff responds that there is no doubt that Mr. Dark had a serious medical condition and that the delay in diagnosis and treatment resulted in his death. Plaintiff contends that the medical personnel and facilities at the Lake County jail do not meet the standards enumerated in <u>Hoptowit v. Ray</u>, 682 F.2d 1237 (9th Cir. 1982), because the only medical personnel is a registered nurse who visits only once a week, and she is not capable of diagnosing and treating the serious medical condition faced by decedent; and it took days for any action to be taken. Plaintiff contends that defendant McDonald's

indifference is shown by his action after Dr. Hussey diagnosed Mr. Dark with cancer when he released Mr. Dark the next morning in a snow storm and freezing weather with no money and over a hundred miles from home. Plaintiff asserts that after Mr. Dark was diagnosed with cancer, he was not prescribed any medication and no arrangements were made for him to stay in the hospital where he could receive care and pain medication. Plaintiff asserts that defendants were deliberately indifferent when they released Mr. Dark less than twenty-four hours after he was diagnosed with cancer rather than face a huge medical bill, and released him in a snow storm far from home. Defendants reply that plaintiff addresses issues which are not relevant to the questions to be decided and plaintiff makes no response to their arguments that defendant Wilkie has not been served or that she and defendant McDonald are entitled to summary judgment based on qualified immunity. They contend that plaintiff does not show the crucial element of deliberateness or intent behind the actions and identifies no facts of deliberate indifference beyond mere speculation. Defendants contend that plaintiff's authority for claiming that a duty to provide medical care does not cease after Mr. Dark was released is a narrow holding distinguishable from the facts of this case. Defendants contend that plaintiff offers no expert medical testimony in support of the assertion that delay in diagnosis and treatment resulted in Mr. Dark's death. Defendants contend that Lake County provides reasonably speedy access to outside medical professionals to treat inmate health problems when the expertise of the in-house nurse is not sufficient. Defendants contend that all reasonable jail protocols were followed when Mr. Dark was released and plaintiff offers no evidence which suggests that releasing Mr. Dark pursuant to standard protocol caused his progressive cancer to worsen or that defendant knew that it would.

Defendants contend that nowhere in the Oregon statutes cited by plaintiff is there an affirmative duty on local correctional facilities to continue the detention of an ill detainee until he is well.

**A. Defendants' motion for summary judgment**

**1. Facts**

In making the following findings of fact, the court considers the evidence in the light most favorable to plaintiff[1]:

Thomas E. Dark was arrested by Lake County deputies for assaulting his wife. He was booked into Lake County Jail on January 2, 2003. (Jan. 26, 2005, J. Dark Decl. pp 1-2; McDonald Decl. Ex. 1.)

On January 3, 2003, plaintiff Judy Dark petitioned the circuit court and received a restraining order against Thomas Dark. (McDonald Decl. Ex 2.)

When a jail inmate needs medical attention of a nurse or doctor, the inmate completes a Lake County Jail Request for Medical Care form. On Saturday, January 25, 2003, Thomas Dark completed a Request for Medical Care form, and requested to see the jail nurse, complaining of swelling and pain in his neck. (Wilkie Decl. ¶ 4.)

The Lake County Jail nurse, Mary Wilkie, works at the jail on Tuesdays or Wednesdays and as needed. She examined Mr. Dark on Tuesday, January 28, 2003, and observed swelling of his lymph node on the right side of his neck. Mr. Dark stated to her that

---

[1] Having considered defendant's motion to strike portions of the Denton and Dark affidavits offered by plaintiff, which is unopposed, the court sustains defendant's objections and grants defendant's motion to strike. Plaintiff's additional facts included in her concise statement in response are deemed admitted pursuant to Local Rule 56.1(f), with the exception of plaintiff's proposed fact 18, which is unsupported by the admitted evidence.

Findings and Recommendation - Page 4

he had noticed the swelling for the previous four days. (Wilkie Decl. ¶ 5.) Nurse Wilkie called Dr. Hussey and was told to arrange a visit to Dr. Hussey at the emergency room for Mr. Dark, which was his standard procedure. (Wilkie Decl. Ex. 1 .)

On Thursday, January 30, 2003, Mr. Dark was taken to Lakeview Hospital emergency room on a routine visit where Dr. Hussey examined him. (Jan. 26, 2005, J. Dark Decl. p 2, Ex. pp 1-2; Wilkie Decl. Ex. 1.) Dr. Hussey apparently determined that Mr. Dark had an infection at the angle of the mandible on his right side, and believed it was secondary to a dental infection. (Jan. 26, 2005, J. Dark Decl. Ex. p 1.) Dr. Hussey prescribed an antibiotic and recommended seeing a dentist as soon as possible. (Jan. 26, 2005, J. Dark Decl. Ex. p 1; Wilkie Decl. Ex. 4.) The examination of Thomas Dark by Dr. Hussey on January 30 lasted 5 minutes and consisted of no tests. (July 15, 2005, J. Dark Decl. Ex.)

Mr. Dark was subsequently taken to Dr. Sabin, a local dentist on February 11, 2003, for the exam requested by Dr. Hussey. (Court docket #16, p 2.) During this visit to Dr. Sabin, Mr. Dark had a tooth pulled. (Wilkie Decl. Ex. 2.)

On Sunday, February 16, 2003, Mr. Dark completed another Lake County Jail Request for Medical Care form and asked to see the nurse, with similar complaints of his neck being swollen and becoming more painful. He was again examined by Nurse Wilkie on Tuesday, February 18, 2003. (Wilkie Decl. ¶¶ 6-7, Ex. 2.) Nurse Wilkie again contacted Dr. Hussey and arranged for Mr. Dark to visit him. (Wilkie Decl. ¶¶ 6-7, Ex. 2.)

On Thursday, February 20, 2003, Mr. Dark was taken to Dr. Hussey's office and examined. (Jan. 26, 2005, J. Dark Decl. Ex. p 3; Wilkie Decl. Ex. 2.) Dr. Hussey recorded that he observed no improvement in the mass in Mr. Dark's neck from the use of the

antibiotics he prescribed and he ordered a CT scan, which revealed a metastatic malignancy. (Jan. 26, 2005, J. Dark Decl. Ex 1, pp 3-4.) Dr. Hussey discussed the results of the test with Mr. Dark. (Jan. 26, 2005, J. Dark Decl. Ex 1, pp 3-4.)

Mr. Dark was released by Order signed by Judge Simpson from the Lake County Jail on Friday, February 21, 2003, under the condition that he not contact Judy Dark, and that he abide by the Restraining Order against him by Judy Dark. (McDonald Decl. Ex. 3.) The release in the court file does not bear the signature of Thomas Dark. (Ingram Decl. Ex.)

All property and clothing Mr. Dark had taken from him upon his entrance to Lake County Jail was returned to him upon his release. (McDonald Decl. ¶ 8, Ex. 4.) Mr. Dark's release followed normal jail protocol. (McDonald Decl. ¶ 8, Ex. 4.) Thomas Dark was wearing sweats and slippers when he was released. (Denton Decl.) The weather on the date of the release of Thomas Dark was very cold, stormy and snowing. (Denton Decl.) The distance between Lakeview and Silverlake where Thomas Dark's mother lived is approximately 110 miles. (Denton Decl.) When Thomas Dark was released by Defendant McDonald, there was no provision made for him to see a doctor or for transportation. (July 15, 2005, J. Dark Decl.) Defendant McDonald did not make any arrangements for transportation for Thomas Dark. (July 15, 2005, J. Dark Decl.)

During Mr. Dark's incarceration at Lake County Jail, he was regularly administered eight different medications, both pre-existing prescriptions that he received immediately upon entry, and new medications prescribed by the doctors he was taken to. (Wilkie Decl. Ex. 3.)

Sheriff McDonald estimates the funding for medical needs of prisoners and proposes

this figure to the Lake County Commissioners for his annual budget. Sheriff McDonald's approved budget figure is only an estimate, and funds are ultimately allocated according to the inmate needs, regardless of what amount is estimated each year. (McDonald Decl. ¶ 3, Ex. 1 .)

The closest competent medical care facilities for the condition of Thomas Dark is in Bend, Oregon, approximately 180 miles from Lakeview. (Ingram Decl.)

The only medically trained person who visits the jail in Lakeview is a registered nurse and she only visits one day a week. Defendant Wilkie is not competent to diagnose and treat an inmate with cancer. (Wilkie Decl.)

**2. Legal Standard**

A moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . ." Fed. R. Civ. P. 56©); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th

Findings and Recommendation - Page 7

Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076.

### 3. Analysis

Defendants McDonald and Wilkie claim that they are entitled to qualified immunity. Qualified immunity shields government agents from suit for damages if a reasonable official could have believed that his or her conduct was lawful, in light of clearly established law and the information possessed by the official. Anderson v. Creighton, 483 U.S. 635, 637-39, 641 (1987); Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam). This standard shields all government officials except those who are either plainly incompetent or who knowingly

violate the law. Malley v. Briggs, 475 U.S. 335, 341 (1986). To determine if a defendant is entitled to qualified immunity, the court employs the sequential analysis set forth by the Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001).

First, the court must ask whether the facts alleged by plaintiff, taken in the light most favorable to plaintiff, establish a constitutional violation. Id. at 201; Robinson v. Solano County, 278 F.3d 1007, 1013 (9th Cir. 2002) (en banc). If no constitutional right would have been violated under the facts alleged, then the analysis ends. Saucier, 533 U.S. at 201. If a violation could be established under the facts alleged, the court will then consider whether the right was clearly established. Id.; Robinson, 278 F.3d at 1013. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Saucier, 533 U.S. at 201. The court must determine whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. at 202. If the law does not put an officer on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate. Id.

A pretrial detainee's rights are grounded in the Due Process Clause, but courts use the standards developed from Eighth Amendment jurisprudence when analyzing pretrial detainee rights. Cabrales v. County of Los Angeles, 864 F.2d 1454, 1461 n.2 (9th Cir. 1988), vacated, 490 U.S. 1087, reinstated, 886 F.2d 235 (9th Cir. 1989). The Fourteenth Amendment imposes a constitutional obligation upon the government to provide medical care for those it incarcerates. McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997); Delker v. Maass, 843 F. Supp. 1390, 1398 (D. Or. 1994). The government deprives an incarcerated individual

of due process rights if government officials are deliberately indifferent to the individual's serious medical needs, which satisfies the Eighth Amendments proscription of "'unnecessary and wanton infliction of pain.'" Estelle v. Gamble, 429 U.S. 97, 104 (1976); Delker, 843 F. Supp. at 1398, 1400. Deliberate indifference requires a "purposeful act or failure to act on the part of the defendant," and not insubstantial harm. McGuckin, 974 F.2d at 1060. Deliberate indifference requires a subjective approach; the official must know of and disregard an excessive risk to an inmate's health. Farmer v. Brennan, 511 U.S. 825, 837-39 (1994). In the context of serious medical needs, "[d]eliberate indifference requires, at a minimum, that the defendant thought about the matter (deliberated) and chose to ignore it." Delker, 843 F. Supp. at 1400 (citing Wilson v. Seiter, 501 U.S. 294, 300 (1991)). Deliberate indifference to serious medical needs may be manifested in two ways: "It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988); Delker, 843 F. Supp. at 1400-01. Negligence or malpractice, or inadvertent failure to provide adequate medical care does not establish the requisite culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hutchinson, 838 F.2d at 394; Delker, 843 F. Supp. at 1398; Gamble, 429 U.S. at 105.

Plaintiff argues that defendant McDonald was deliberately indifferent to Mr. Dark's need for medical care when he obtained an "OR" (McDonald Ex. 3 Release Agreement - Recognizance) the day following Mr. Dark's diagnosis of cancer, and released him in a snow storm and freezing weather, with no money, and over one-hundred miles from home. He suggests that defendant released him rather than provide him with medical care as

Findings and Recommendation - Page 10

constitutionally required.

It is undisputed in the record that Mr. Dark was released following issuance of an order signed on February 21, 2003; that all property and clothing was returned to Mr. Dark upon his release; and that Mr. Dark's release from jail followed normal jail protocol. The record shows that Plaintiff offers evidence that Mr. Dark was wearing sweats and slippers when he was released; that the weather was very cold, stormy, and snowing; that the distance between Lakeview and Silverlake where Mr. Dark's mother lived is approximately 110 miles; and that defendant McDonald did not make any arrangements for Mr. Dark to see a doctor or for transportation for him when he was released.

To the extent that plaintiff argues that Mr. Dark was owed a duty of medical care rather than be released to seek his own medical care, plaintiff offers no authority in support. To the extent she argues that Mr. Dark was owed a duty of medical care after he was released, the court finds that plaintiff's authority does not support her argument. The Ninth Circuit in Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir. 1999), held that outgoing prisoners who are receiving medication and continue to require medication after release must be supplied with medication for the period of time reasonably necessary to permit the prisoner to consult a doctor and obtain a new supply. Plaintiff offers no evidence that Mr. Dark was not provided medication which he required following his release.

Plaintiff offers no evidence which shows that defendant McDonald was aware that his acts or omissions in releasing Mr. Dark when he did and in the manner that he did constituted an excessive risk of harm to Mr. Dark, or that defendant purposely disregarded such risk. Plaintiff offers no evidence which supports her assertion that any delay in

Findings and Recommendation - Page 11

diagnosis or treatment by defendants resulted in Mr. Dark's death. On this record, the court finds that plaintiff does not show that decedent's constitutional right to medical care for serious medical needs was violated by defendant McDonald. On the threshold inquiry of whether, taking the facts alleged by plaintiff in the light most favorable to her plaintiff has established a constitutional violation, the court has found that no constitutional violation is shown on the record. Accordingly, the qualified immunity analysis ends. Defendants' motion for summary judgment as to defendant McDonald should be granted.

As to defendant Wilkie, it is undisputed that defendant Wilkie, the Lake County Jail nurse, works at the jail on Tuesdays or Wednesdays and as needed; that she examined Mr. Dark on January 28, 2003, following Mr. Dark's request for medical care completed on January 25, 2003, and observed the swelling four days after he noticed the swelling; and that she called Dr. Hussey and arranged a visit to him at the emergency room, where he was seen two days later. Defendant Wilkie examined Mr. Dark again on February 18, 2003, after he had completed another request for medical care two days earlier, and she again contacted Dr. Hussey and arranged for a visit. Plaintiff makes no specific argument concerning defendant Wilkie and offers no evidence that defendant Wilkie failed to act to provide or obtain medical care for Mr. Dark, or that she was aware of an excessive risk of harm to Mr. Dark or deliberately disregarded the risk. Nor does she offer evidence which supports her assertion that any delay in diagnosis or treatment by defendants resulted in Mr. Dark's death. On this record, the court finds that plaintiff makes no showing that decedent's constitutional right to medical care for serious medical needs was violated by defendant Wilkie. On the threshold inquiry of whether plaintiff has established a constitutional violation, the court

has found that no constitutional violation is shown on the record, and the qualified immunity analysis ends. Defendants' motion for summary judgment as to defendant Wilkie should be granted.

Lake County contends that it is entitled to summary judgment. Municipalities are not liable under respondeat superior principles for constitutional violations of their employees, simply because of the employment relationship. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 692-694 (1978). Municipal liability results "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." Id. at 694; Mateyko v. Felix, 924 F.2d 824, 826 (9th Cir. 1991). A municipality can be liable only when its policy or custom is the moving force behind the particular constitutional violation. Id. There must be a direct causal link between the policy or custom and the alleged constitutional violation. City of Canton v. Harris, 489 U.S. 378, 385 (1989).

The Ninth Circuit in Hoptowit, 682 F.2d at 1253, found that:

> The Eighth Amendment requires that prison officials provide a system of ready access to adequate medical care. Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff. Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems. The medical staff must be competent to examine prisoners and diagnose illnesses. It must be able to treat medical problems or to refer prisoners to others who can. Such referrals may be to other physicians within the prison, or to physicians or facilities outside the prison if there is reasonably speedy access to these other physicians or facilities. In keeping with these requirements, the prison must provide an adequate system for responding to emergencies. If outside facilities are too remote or too inaccessible to handle emergencies promptly and adequately, then the prison must provide adequate facilities and staff to handle emergencies within the prison. These requirements apply to physical, dental and mental health.

(Citing Estelle, 429 U.S. at 103-04.)

Here, it is undisputed in the record that jail inmates at the Lake County Jail make their medical needs known by completing a Request for Medical Care form; a registered nurse visits the jail one day each week and as needed; that defendant Wilkie, who examined Mr. Dark on two occasions following his requests for medical care contacted Dr. Hussey and arranged for Mr. Dark to be examined by Dr. Hussey; that Dr. Hussey examined Mr. Dark on two occasions, first determining that Mr. Dark had an infection secondary to a dental infection for which antibiotics were prescribed and a visit to the dentist recommended, and later diagnosing a metastatic malignancy after a CT scan ordered by him; and that Mr. Dark was seen by a local dentist, Dr. Sabin, as recommended by Dr. Hussey, who pulled a tooth. The record shows that Mr. Dark was regularly given both preexisting and new medications. The court finds that plaintiff offers no evidence that Lake County did not comply with its constitutional duty to provide a system of ready access to adequate medical care as enumerated in Hoptowit, supra. Further, the record shows that Mr. Dark's release followed normal jail protocol; and that the approved budget figure for medical needs of prisoners is only an estimate and funds are ultimately allocated according to inmate needs, regardless of the amount estimated each year.

In addition, the court has found that the record does not support a finding that any constitutional violation took place relating to the incarceration and release of Mr. Dark. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

Plaintiff offers no evidence which would raise a genuine issue of material fact as to whether Lake County violated Mr. Dark's constitutional rights. Accordingly, defendants'

motion for summary judgment as to defendant Lake County should be granted.

**B. <u>Defendants' motion to dismiss</u>**

Alternatively, defendants' move to dismiss defendant Wilkie for lack of service of summons and complaint pursuant to Federal Rules of Civil Procedure 12(b)(2). Federal Rules of Civil Procedure 4(m) provides in pertinent part: "If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion . . . , shall dismiss the action without prejudice as to that defendant . . . ." Defendant Wilkie was named as a defendant in plaintiff's first amended complaint filed on June 16, 2004. In her declaration dated June 15, 2005, she states that she has never been served a summons and complaint. Plaintiff offers no opposition to defendants' motion to dismiss defendant Wilkie for failure to serve her with summons and complaint within 120 days after the complaint naming her was filed. Accordingly, defendants' alternative motion to dismiss defendant Wilkie should be granted.

## II. <u>ORDER</u>

Based on the foregoing, defendants' motion to strike (#51) is granted.

## III. <u>RECOMMENDATION</u>

Based on the foregoing, it is recommended that the motion for summary judgment by defendants Lake County, McDonald, and Wilkie be granted, and that defendants' alternative motion to dismiss defendant Wilkie be granted (#35), and that these defendants be dismissed with prejudice.

***<u>This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals</u>.*** **Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules**

**of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.** *__The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have ten days within which to file a response to the objections__*. **Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.**

DATED this __17____ day of October, 2005.

_____/s/_____
UNITED STATES MAGISTRATE JUDGE